# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY JOHNSON, | CASE NO. 1:03-cv-6359-OWW-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| T. TURMEZEI, et al., | (Doc. 44) |
| Defendants. | |

I. Findings and Recommendations Addressing Motion for Summary Judgment

    A. Procedural History

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's amended complaint, filed December 22, 2003, against defendants Turmezei and Trott ("defendants") for use of excessive force, in violation of the Eighth Amendment and violation of equal protection. On July 17, 2007, defendants filed a motion for summary judgment, and on November 29, 2007, plaintiff filed an opposition.

    B. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the

1

>pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there is no triable issue as to the matters alleged in his complaint. Id. This requires plaintiff to establish beyond controversy every essential element of his retaliation claims. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

As to defendants' motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

3

that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

    C.      Defendants' Motion for Summary Judgment

          1.      Undisputed Facts[1]

1. Plaintiff is an inmate in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR), pursuant to a valid judgment in the San Diego Superior Court, in which he was convicted of murder in the second degree. Plaintiff was housed at the California Correctional Institution (CCI) at time material to the matters at issue.

2. Defendants were employed by the CDCR and assigned at CCI at times material to the matters at issue.

3. Plaintiff began experiencing problems with his hearing sometime in 2003.

4. On August 10, 2001, the doctor noted that plaintiff's ears were clear but he had a hearing deficit.

5. Plaintiff had a hearing test on December 20, 2001. The doctor noted severe/profound hearing loss which plaintiff claimed had worsened in the past year associated with his diabetic condition. However, the screening indicated that Johnson's reflex's were much better than would be expected with this type of hearing loss. Johnson was referred to the Ear, Nose and Throat (ENT) doctor for his sudden, recent hearing loss and unusual screening.

6. Johnson was seen again on April 18, 2002. The doctor noted that Johnson was able to "hear, carry on a conversation with me at normal tones. Normal speech. When originally called didn't seem to hear but was observed to be discussing with another inmate in a very low

---

[1] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). In this instance, plaintiff did not comply with the Local Rule. However, plaintiff's complaint and cross-motion for summary judgment may be treated as opposing affidavits, to the extent that they are verified and set forth admissible facts (1) within plaintiff's personal knowledge and not based merely on plaintiff's belief, and (2) to which plaintiff is competent to testify. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985).

|   |   |   |
|---|---|---|
| 1 |   | volume of voice.  Obviously hearing aids are working and inmate can hear and function in |
| 2 |   | this environment at this time.  Can hear me without lip reading - even when not looking at |
| 3 |   | me.  Will modify the originally issued chrono of 2/15/02 to reflect this new situation." |
| 4 | 7. | On June 21, 2002, Johnson told medical staff that he wanted to be transferred to a program |
| 5 |   | that teaches sign language. |
| 6 | 8. | Dr. Kim granted Johnson's request on September 26, 2002 and supported his transfer to a |
| 7 |   | "designated institution." |
| 8 | 9. | On September 22, 2002, Officers Turmezei and Trott were monitoring prisoners who were |
| 9 |   | returning to their cells after breakfast.  The officers called for inmates two at a time and |
| 10 |   | secured the prisoners inside of their cells. |
| 11 | 10. | Officers Turmezei went to cell #433 and checked to see if the door was secured.  The cell |
| 12 |   | was empty and Turmezei noticed several inmates were still milling around the tier.  As he |
| 13 |   | walked between cells 433 and 434, Officer Turmezei yelled, "Take it home.  Return to your |
| 14 |   | cells." |
| 15 | 11. | When he came to Johnson's cell, #438, Turmezei noticed inmate Johnson standing in the |
| 16 |   | doorway looking at him.  He stopped and told Johnson to step inside his cell and close the |
| 17 |   | door.  Johnson asked, "why are you telling me what to do?  I'm not a little kid."  Turmezei |
| 18 |   | again told Johnson to step back inside his cell, this time motioning with his arm.  Johnson |
| 19 |   | stated he was a "convict" who had been doing this for many years and did not need help. |
| 20 | 12. | Turmezei took hold of the cell door, pulling it open.  He looked into the cell and saw that no |
| 21 |   | one was inside.  Johnson frowned and shouted, "man, don't get that close to me.  Something |
| 22 |   | might happen.  You might flinch and then I'll have to react." |
| 23 | 13. | Turmezei, trying to calm Johnson, took a step back and said, "no one is going to flinch. |
| 24 |   | Everything will be ok.  Step back into your cell so that I can close the door." |
| 25 | 14. | Johnson refused to comply with the order, then asked, "What if I don't want to step inside |
| 26 |   | my cell?  What if I want to stand out here?"  He then leaned toward Officer Turmezei and |
| 27 |   | asked, "What are you going to do now?"  At the same time Johnson began making disjointed |
| 28 |   | motions with his arms, becoming louder as he moved closer to Turmezei.  Turmezei again |

ordered Johnson to get back inside his cell, but Johnson continued making erratic gestures, stating "I can't hear you. I can take care of myself."

15. Officer Turmezei removed his can of pepper spray from the holster and brought it down by his left side. As he did so, Turmezei contends he saw several inmates moving toward him, approximately 25-30 feet away.

16. Johnson's cell partner, Inmate Stuart came from the day room and joined Johnson. Turmezei ordered both prisoners into their cell but they became loud, speaking at the same time.

17. Stuart moved toward the officer's left side, stating, "What's your fucking problem." Turmezei raised his pepper spray and pointed it at Stuart, who back up toward the open cell. Officer Turmezei ordered both inmates to turn around and submit to a pat down search, but neither inmate complied with the order.

18. Officer Turmezei radioed for assistance then raised his pepper spray at Johnson and ordered him to turn around. Johnson yelled back, "I can't hear you" and moved toward Turmezei.

19. Turmezei again radioed for help as the control booth officer ordered the inmates to "get down." Turmezei shouted at Johnson to get down while pointing his pepper spray in Johnson's direction and motioning toward the ground. As Johnson reached behind his back Turmezei sprayed him with one to two second burst of pepper spray striking Johnson on the right side of the face. At the same time, Officer Trott arrived on the scene and sprayed Johnson with a second burst of pepper spray, hitting him on the left side of the face.

20. Johnson continued standing and Turmezei shouted for him to get on the ground. When Johnson failed to comply with the order, Turmezei sprayed him with a one-second burst of pepper spray to the back of the head. Johnson bent over and Turmezei yelled for him to get all the way down on the ground. Johnson finally complied, got to the ground, pulled his hands from underneath his body and dropped a chrono on the ground.

21. Officer Gonzales arrived and placed Johnson in handcuffs while Turmezei pointed his pepper spray at Johnson.

22. Johnson was then escorted out of the housing unit and to the clinic and defendants contend he was decontaminated with running water for approximately 15 minutes. The Medical

6

1  Technical Assitant (MTA) noted no obvious injuries other than redness to Johnson's face and
2  eyes. Johnson was then cleared for placement in administrative segregation.
3  23.   Johnson claimed that his hearing aids were damaged from the pepper spray.
4  24.   At no time, ether before or after the incident of September 22, 2002, does Johnson recall
5  seeing either Turmezei or Trott use pepper spray on any other inmate.
6     2.   <u>Discussion</u>
7     a.   Excessive Force

In his complaint, plaintiff alleges that defendants Turmezei and Trott pepper-sprayed him during an incident in which they contend plaintiff refused to obey an order. Plaintiff contends he is severely hearing impaired and could not hear what defendant Turmezei was saying when he made the order. Plaintiff contends he advanced on defendant Turmezei to hear what he was saying and reached in his pocket to show him his chrono indicating that he is hearing impaired. Plaintiff also alleges he was wearing a vest identifying him as hearing impaired. Plaintiff contends that defendants' use of pepper spray was not a good faith effort to maintain discipline because defendants were aware of his hearing impairment and consequently, he need to come closer and reach into his pocket for his chrono.

Defendants contend they used pepper spray only after plaintiff refused repeated orders to return to his cell and lock up. Defendants contend plaintiff not only refused the orders but he also became loud and argumentative, making wild gestures and advancing on Officer Turmezei. UF 11-18. Defendants contend that plaintiff's cell mate entered the dispute and other inmates began to congregate which required Officer Turmezei to call for assistance. UF 15-19. Defendants contend that while the other inmates complied with orders, plaintiff did not. UF 17-20. Defendants contend that neither their orders nor the threat of pepper spray caused plaintiff to cease his behavior and lock up as ordered. UF 11-18. Defendants contend that it was only when plaintiff advanced toward Officer Turmezei that pepper spray was used. UF 18-20. When plaintiff refused an order to get down on the ground, Officer Turmezei sprayed him again.

Defendants argue that as long as an inmate engages in violent and disruptive behavior, prison officials are authorized to take appropriate action to maintain prison order and discipline and to

protect staff and other inmates. *See LeMaire v. Maass*, 12 F.3d 1444 (9th Cir. 1993). Defendants argue that plaintiff's threatening behavior, coupled with his refusal to follow orders led to the use of pepper spray. Defendants argue they used a small amount of force to regain order and maintain discipline. Defendants argue that the use of pepper spray was a tempered use of force in response to the situation presented by the inmates' refusal to comply with defendant orders and used only aft defendant Turmezei gave both verbal orders and used hand gestures to get plaintiff back inside his cell. Plaintiff refused even after defendant showed the pepper spray to both plaintiff and his cell partner. UF 17-18. Defendants contend that plaintiff had no visible injuries as a result of the incident and that he was examined by an MTA who noted only redness on his face and eyes. UF 22. Plaintiff was then decontaminated with water and fresh air. *Id.*

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In his opposition to defendants' motion for summary judgment, plaintiff contends his hearing aids were not working at the time of the incident. He argues that the documentation submitted by the prison doctor in support of UF 6 is insufficient to establish that his hearing aids were working. Plaintiff argues there was no need for the used of force because he was only reaching in his pocket for his chrono to show defendants why he couldn't understand them. Plaintiff contends he did not hear defendants' commands and did not understand them. Plaintiff also disputes that there were inmates gathering around the defendants in any threatening manner. Plaintiff contends the only inmates around at the time of the incident were entitled to be there because they were standing in

front of their assigned cells.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Here, it is undisuted that plaintiff did not comply with defendants' orders to return to his cell. While plaintiff states that he did not hear or understand the verbal orders, he does not dispute that after the exchange, defendant Turmezei removed his pepper spray from his holster, making it visible to plaintiff. *See* UF 15. Even after defendant Turmezei removed the pepper spray from his holster, told plaintiff to "get down," and motioned toward the ground, plaintiff did not comply. *See* UF 19.

9

Insubordination is a matter taken very seriously within the confines of an institutional setting. Plaintiff's refusal to comply with the direct orders of defendants created a need for the application of force to gain plaintiff's compliance, and the force at issue was employed for the very purpose of gaining plaintiff's compliance with the order. When an inmate refuses to comply with the order of a staff member, a threat may be reasonably perceived by staff. It is undisputed that defendants repeatedly ordered plaintiff to comply and threatened plaintiff with the use of pepper spray before it was used, and it is undisputed that despite these orders and threats, plaintiff continued to refuse to comply. Thus, defendants could reasonably have perceived plaintiff's continued disobedience to be a threat requiring the use of force. Finally, Turmezei's spraying plaintiff with a one to two second burst of pepper spray and Trott's arriving on the scene and spraying plaintiff with a one second burst of pepper spray was use of force tailored to gain plaintiff's compliance with defendants' orders to get down on the ground.

The force applied by defendants which finally made plaintiff get down to the ground as ordered was reasonable under the circumstances. Viewing the evidence in the light most favorable to plaintiff, the allegations that he did not hear or understand defendants' orders to get down and their subsequent use of pepper spray to gain his compliance simply do not support a claim for relief under section 1983 for use of excessive physical force.

      b.     Equal Protection Claim

Plaintiff, an African American inmate, contends that while he was housed at CCI, Correctional Officers used pepper spray on Black inmates more frequently than inmates of other races.

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "'To state a claim . . . for a violation of the Equal Protection Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a

plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). "To avoid summary judgment, [plaintiff] 'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [defendant's] decision was . . . motivated'" by plaintiff's membership in a protected class. Serrano, 345 F.3d at 1082 (quoting Bingham v. City of Manhattan Beach, 329 F.3d 723, 732 (9th Cir. 2003) (citations and alterations omitted)).

Defendants argue they are entitled to summary judgment because they did not discriminate against plaintiff and they had a non-discriminatory reason for disbursing the pepper spary. As discussed above, it is undisputed that plaintiff did not comply with orders and it was only then that pepper was used. Defendants deny that their use of pepper spray during the September 22, 2002 incident was based on plaintiff's race. Indeed, at his deposition, plaintiff could not recall ever seeing either defendant use pepper spray on any other inmate. UF 25.

In opposing the motion for summary judgment, plaintiff does not submit any evidence in support of his claim but argues that the court should draw a "negative inference" from defendants' failure to produce documents evidencing complaints of racial targeting in response to his discovery requests. Plaintiff may defeat defendant's motion only if there exists admissible evidence raising a triable issue of fact as to whether defendant intentionally discriminated against him based on his membership in a protected class. Plaintiff has not tendered any admissible evidence that defendants discriminated against him on the basis of his race, and defendants are therefore entitled to judgment as a matter of law on this claim.

D. Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed July 17, 2007, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 6, 2008**               **/s/ Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE